**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-00002-CMA-NYW

CARNE M. MWANGI,

      Plaintiff,

v.

ANTHONY NORMAN, Denver Police Deputy, in his individual capacity,
JUSTIN KENNEDY, Denver Police Deputy, in his individual capacity,
PERRY SPEELMAN, Denver Police Officer, in his individual capacity,
VINCENT TALTY, in his individual capacity, and
ALL ARRESTING OFFICERS, in their individual capacity,

      Defendants.

---

## RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

    This civil action is before the court on the following motions:

1. Defendants Anthony Norman, Justin Kennedy, and Perry Speelman's (collectively, "Denver Defendants") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)," [#28, filed May 4, 2016];

2. Defendant Vincent Talty's "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)," [#57, filed July 29, 2016];

3. The Denver Defendants' Motion to Strike Surreply ("Motion to Strike Surreply") [#64, filed August 4, 2016];

4. Plaintiff Carne M. Mwangi's ("Plaintiff" or "Mr. Mwangi") "Motion Requesting A Scheduling Conference" ("Motion for Scheduling Conference"), [#71, filed November 10, 2016]; and

5. Denver Defendants and Defendant Talty's Motion to Stay Discovery ("Motion to Stay"), [#76, filed December 1, 2016].

These matters were referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated April 4, 2016 [#14] and the memoranda dated May 19, 2016 [#34], August 1, 2016 [#60], August 4, 2016 [#65], November 14, 2016 [#72], and December 1, 2016 [#77].  For the reasons set forth below, I respectfully **RECOMMEND** that Defendant Talty's Motion to Dismiss be **GRANTED** and the Denver Defendants' Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**, and **ORDER** that the Motion to Strike Surreply is **GRANTED**, the Motion to Stay is **GRANTED**, and the Motion for Scheduling Conference is **DENIED**.

## BACKGROUND

Because it is relevant to the treatment of the pending motions, this court sets forth in more detail than usual the procedural background related to Mr. Mwangi's operative complaint.  Mr. Mwangi initiated this action on January 4, 2016, by filing *pro se* a Prisoner Complaint pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, asserting violations of the Fourth and Eighth Amendments arising from an allegedly unlawful arrest that occurred on January 6, 2014.  [#1].  He named the Denver Defendants, "Deputy X," and "All arresting officers, et. al," in their official and individual capacities. [#1].  While the Denver Defendants were individually named, the original Complaint

2

contained no allegations specific to any of them.   *See* [#1].   Rather, the original

Complaint focused on a "Deputy X," and essentially averred that the "other defendants"

failed to intervene.   [*Id.*].

Later the same day, Plaintiff filed an Amended Complaint asserting additional

Fourth and Eighth Amendment violations as well as a violation of the due process

clause and equal protection clause of the Fourteenth Amendment.   [#6].   The following

facts are derived from the Amended Complaint and taken as true for the purposes of

this Recommendation and Order. Mr. Mwangi alleges that on the evening of January 6,

2014, a Walgreen's employee ordered him to leave the store because the employee

believed Plaintiff was harassing a female customer; the employee then confronted

Plaintiff on the sidewalk and shoved him backward.

Shortly thereafter, as Plaintiff waited for a light rail train in downtown Denver, one

or more  of the Defendants knocked him to the ground from behind and commanded

him to "stop resisting."   [#6 at 9].   According to Plaintiff, he was not resisting.   Mr.

Mwangi identifies the Denver Defendants as follows: "arresting officers—inluding the

said three who submitted and admitted their written statements to discovery, case

number 14CR00084."   [#6 at ¶ 4].   Mr. Mwangi states that an officer pulled right,

another pushed left, and yet another twisted the same hand.   Another buried his knees

and/or elbow into Plaintiff's back, causing excruciating pain.   Another used his knee or

foot to slam and painfully pin Plaintiff's head against the concrete pavement.   Plaintiff

sensed the rest of the Defendants stomping, kicking, and punching his torso.   [*Id.* at 9].

An officer then handcuffed Mr. Mwangi and led him down the street, where Deputy X

leaned him against the back of a police cruiser and repeatedly taunted Plaintiff stating "we don't like you" and "[you] need[] to go back to Africa." [*Id.* at 10]. Deputy X then proceeded to squeeze Plaintiff's genitals with significant force, causing him to experience excruciating pain, and slammed Plaintiff head first into the pavement. Subsequently, Deputy X "straddled the Plaintiff and commenced to sexually assault him over his clothes," while continuing to lob verbal assaults. [*Id.* at 11]. Plaintiff states that the other Defendants "shielded [Deputy X] from the public with their bodies, while chanting him on." [*Id.* at 16]. Plaintiff suffered "excruciating physical, mental and psychological pain and injury" as a result of the incident, including a "severe facial injury." [*Id.*] Mr. Mwangi was subsequently charged with, prosecuted for, and convicted of second degree kidnapping (the "State Criminal Action"). *See* [#57-1].[1] *See also* [#6 at 2-6]. The only allegation that specifically identifies a particular actor other than Deputy X is an allegation that "Deputy Y, stated to filming [sic]. This particular video was supposedly admitted into discovery, for case number 14CR00084, for the first time ever on December 4, 2015, almost two years later." [#6 at ¶ 69].

On January 6, 2016, the court granted Plaintiff leave to proceed pursuant to 28 U.S.C. § 1915. [#5]. That statute and the Local Rules of this District require a court to evaluate a prisoner complaint and dismiss *sua sponte* an action at any time if the action

---

[1] Defendant Talty attached to his Motion to Dismiss a redacted copy of the State Court Action record as well as an unredacted copy, which he filed under restriction. *See* [#57-1 and #57-2]. The court may take judicial notice of the documents as matters of public record without converting the Motion into one for summary judgment. *See Pace. v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (affirming district court's decision to take judicial notice of state court documents in considering a motion to dismiss). This court also notes that Plaintiff does not dispute the authenticity of the State Criminal Action record as offered by Defendant Talty. *See generally* [#70].

is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); D.C.COLO.LCivR 8.1(b).  On January 13, 2016, the Honorable Gordon P. Gallagher ordered Plaintiff to file a second amended complaint addressing, among other pleading deficiencies, whether he had suffered an injury caused by a municipal policy or custom and how each named Defendant personally participated in the alleged constitutional violations.  [#7].  Judge Gallagher ordered Mr. Mwangi file a Second Amended Complaint within 30 days of the January 13 Order and warned Mr. Mwangi that failure to file an amended complaint that cured the identified deficiencies could result in the court dismissing the action altogether without further notice.  [*Id.* at 5].  Mr. Mwangi then requested an extension of time to file the amended complaint, which the court granted, permitting Plaintiff to file a Second Amended Complaint within 30 days of the February 18, 2016 Minute Order.  [10, #11]. Plaintiff thereafter failed to timely file an amended complaint.

On April 4, 2016, well after the 30-day extension expired, the Honorable Lewis T. Babcock issued an Order to dismiss the case in part and to draw to a district court judge and magistrate judge.  [#12].  In construing Mr. Mwangi's claims liberally, Judge Babcock found that the following § 1983 claims did not appear to be appropriate for summary dismissal: Fourth Amendment excessive force claim against Defendants sued in their individual capacities; Fourteenth Amendment equal protection claim against Deputy X sued in his individual capacity; and Fourteenth Amendment due process claim asserted against Defendants in their individual capacities.  [*Id.*].  The court dismissed all other claims as legally frivolous.  [*Id.*].  The case was then drawn to the Honorable

Christine M. Arguello, who referred the matter to the undersigned Magistrate Judge for pre-trial proceedings.  *See* [#14].

On April 4, 2016, Mr. Mwangi filed a proposed Second Amended Complaint, naming as Defendants Sergeant Speelman, Officer Talty, Officer Kennedy, Officer Bloodworth, Officer Norman, and "all other arresting officers," and asserting two new claims arising from the January 6, 2014 arrest.  [#16].  On April 11, 2016, Plaintiff filed a motion to amend, asking the court to consider his proposed Second Amended Complaint as timely-filed.  *See* [#19].  This court recommended granting the motion so as to permit the substitution of Officer Talty for "Deputy X," and to allow Plaintiff's Fourteenth Amendment equal protection claim to proceed against Defendant Talty in his individual capacity.  *See* [#22].  This court also recommended denying the motion to the extent it sought to include new defendants (beyond identification of Defendant Talty) and claims asserted against Defendants in their individual capacities, beyond what Judge Babcock allowed in his April 4, 2016 Order.  *See* [*id.*]   Unlike Officer Talty and Deputy X, there is no correlation between "Deputy Y" as identified in the Amended Complaint, *see* [#6 at ¶ 69], and any Defendant as identified in the proposed Second Amended Complaint, *see* [#16 at 13-14].

On May 16, 2016, the court adopted the Recommendation.   *See* [#32]. Accordingly, the operative pleading in this case is Mr. Mwangi's Amended Complaint filed on January 4, 2016, [#6], as amended to substitute Defendant Talty for Deputy X. The remaining claims are as follows: a Fourth Amendment excessive force claim and Fourteenth Amendment due process claim against all Defendants sued in their

individual capacities; and a Fourteenth Amendment equal protection claim against Defendant Talty sued in his individual capacity.  *See* [#6]; *see also* [#12].  Plaintiff seeks declaratory relief along with compensatory and punitive damages.   [#6 at 16-17]. Although separately docketed as a (Proposed) [Second] Amended Complaint, the pleading at docket entry [#16] has no force or effect, other than to identify Defendant Talty as Defendant X.

The Denver Defendants filed their Motion to Dismiss on May 4, 2016, directed at the Amended Complaint.  [#28].  Mr. Mwangi filed a Response on June 16, 2016 [#49]; the Denver Defendants filed a Reply on June 30, 2016 [#51]; and Mr. Mwangi filed a second Response, which the Defendant Defendants characterize as a surreply, on July 29, 2016 [#58].  The Denver Defendants filed the Motion to Strike Surreply on August 4, 2016.  [#64].

Defendant Talty filed his Motion to Dismiss on July 29, 2016.  [#57].  Mr. Mwangi filed a Response out of time on November 10, 2016 [#70], along with the Motion for Scheduling Conference [#71].  Seven days later, Defendant Talty filed a Motion to Strike the Response as untimely, and asked in the alternative that the court permit a reply. [#73].  This court granted in part and denied in part the motion to strike and ordered Defendant Talty to file a reply, which he submitted on December 7, 2016.  *See* [#75; #78].  All Defendants filed the Motion to Stay on December 1, 2016.  [#76].  These motions are now ripe for review.  *See* D.C.COLO.LCivR 7.1(d).

**STANDARD OF REVIEW**

Defendants collectively argue that Mr. Mwangi fails to state a cognizable claim. Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.*  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Mwangi is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

I.   **The Non-Dispositive Motions**

A.   **Motion to Strike**

The Denver Defendants move to strike Mr. Mwangi's second response to their Motion to Dismiss. *See* [#64]. The Denver Defendants filed their Motion to Dismiss on May 4, 2016. *See* [#28]. Plaintiff's response was thus due by May 25, 2016. In the interim, mail from the court to Mr. Mwangi was returned as undeliverable. *See* [#31; #36; #37]. On May 25, 2016, Mr. Mwangi filed a motion for appointment of counsel, which the court ultimately denied, and effectively advised the court of his current mailing address. *See* [#38]. He subsequently filed a Response to the Denver Defendants' Motion to Dismiss, *see* [#49], to which those Defendants filed a Reply. [#51]. Approximately one month later, Plaintiff filed another Response. *See* [#58].

On August 4, 2016, the Denver Defendants filed the Motion to Strike Surreply arguing that Mr. Mwangi's second response is in fact a surreply, which, under the Federal Rules of Civil Procedure and the Local Rules of this District, a party may not file as a matter of course.  *See* [#64].  Plaintiff did not file a response to the Motion to Strike Surreply.

As Defendants assert, surreplies are permitted only upon leave of the court. CMA Civ. Practice Standard 7.1A(d)(4).  Furthermore, surreplies are generally appropriate only when the moving party introduces new material in his or her reply. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) ("Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply").  Mr. Mwangi did not ask for leave from the court prior to filing the second response, nor does he assert in the second response that the Denver Defendants raised pertinent material for the first time in their Reply.  Finally, in reviewing the Denver Defendants' Reply, I find that a surreply is not appropriate.  Thus, the Motion to Strike Surreply is **GRANTED** and this court views Plaintiff's submission dated June 16, 2016 [#49] as the operative and sole Response.

### B.    Motion for Scheduling Conference and Motion to Stay

Mr. Mwangi requests that this court set a Scheduling Conference in this case, and asks the court to view the "tape shot by Sgt. Speelman (Deputy Y)" to determine his "state of mind at the time the cause of action accrued" prior to the Motion to Dismiss. [#71].  Defendants, who did not respond to the Motion for Scheduling Conference, ask the court to stay discovery pending the resolution of their Motions to Dismiss.  [#76].  In

particular, Defendants argue, they collectively assert entitlement to qualified immunity, with the exception of the claims for excessive force and violation of Plaintiff's equal protection rights as to Defendant Talty.  *See* [#76 at 2].  Furthermore, they contend, the factors courts in this District often consider in determining whether a stay is appropriate weigh in favor of granting their Motion.  [*Id.* at 5 (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-1934-LTB, 2006 WL 894955, *2 (D. Colo. March 30, 2006))].  Although the time in which to respond has not yet passed, and Plaintiff has not filed an early response, the court may rule on a motion at any time after it is filed. D.C.COLO.LCivR 7.1(d).

Respectfully, Mr. Mwangi appears to misapprehend the scope of this court's inquiry.  For reasons discussed below, it is not readily apparent to this court how Mr. Mwangi's state of mind at the time the cause of action accrued is relevant to his surviving claims.  In addition, the court generally does not consider evidence, such as a video, outside of the four corners of the operative complaint in adjudicating a motion to dismiss, but rather limits its inquiry to assessing the legal sufficiency of the claims as pled.  *See Jojola v. Chavez, 5*5 F.3d 488, 494 (10th Cir. 1995) (quoting *Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir. 1993))*.*

In light of my findings below and recommendation that the Motions to Dismiss be granted in full as to Talty and in part as to the Denver Defendants, I find that a stay of all discovery in this matter is warranted pending Judge Arguello's ruling on the Motions to Dismiss.  Accordingly, the Motion to Stay is **GRANTED** and Mr. Mwangi's Motion for Scheduling Conference is **DENIED**.  Once Judge Arguello has an opportunity to pass

on this Recommendation and clarify what, if any, claims remain, this court will set a Status Conference to discuss scheduling as appropriate.

## II.     The Motions to Dismiss

Section 1983 of Title 42 of the United States Code allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). To assert a claim under section 1983, Plaintiff must show (1) he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). "A defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted). The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156-57 (10th Cir. 2001).

Each of the Defendants contends that he is entitled to qualified immunity. [#31 at 5-6; #32 at 5-6; #34 at 12]. The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted)). Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once

a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

### A.   Defendant Talty

Defendant Talty asserts that Plaintiff's claims against him are barred pursuant to the applicable statute of limitations. [#57 at 3-6]. Because the argument is dispositive independent of whether Plaintiff has pled the elements of his claims, this court addresses it first.

### 1.   Statute of Limitations

Defendant Talty argues that the allegations underlying Plaintiff's claims against him derive from events that occurred on January 6, 2014, the date of the arrest, and pursuant to Colorado's two-year statute of limitations for section 1983 claims, Plaintiff was required to assert the claims as to him on or before January 6, 2016. Furthermore, Defendant Talty argues, Plaintiff's naming of "Deputy X" in the original Complaint is insufficient to preserve his claims against Talty; therefore, as of April 2016, when Plaintiff moved to amend the pleading to substitute Talty, those claims were time-barred. [*Id.* at 4]. A statute of limitations argument ordinarily is presented as an affirmative defense; however, the issue may be resolved on a Rule 12(b)(6) motion where the application of the limitations period "is apparent on the face of the complaint." *Dummar v. Lummis,* 543 F.3d 614, 619 (10th Cir. 2008) (citing *Aldrich v. McCulloch Properties., Inc.* 627 F.2d 1036, 1041 & n.4 (10th Cir. 1980)).

For section 1983 claims, state law determines the appropriate statute of limitations and accompanying tolling provisions. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). *See also Industrial Constructors Corp.* v. *U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (an action brought pursuant to 42 U.S.C. § 1983 is subject to the statute of limitations of the general personal injury statute in the state where the action arose). In Colorado, the relevant statute prescribes a two-year statute of limitation. *See* Colo. Rev. Stat. § 13-80-102(1)(g). *See also Blake v. Dickason,* 997 F.2d 749, 750 (10th Cir. 1993) (applying § 13–80–102 to section 1983 claim). The accrual date is the date when the two-year statute of limitations begins to run. Determining the accrual date of a section 1983 cause of action is a question of federal law. *Wallace v. Kato,* 549 U.S. 384, 388 (2007); *Smith v. City of Enid By and Through Enid City Comm'n,* 149 F.3d 1151, 1154 (10th Cir. 1998).

Here, the accrual date is the date on which Mr. Mwangi knew or should have known that his constitutional rights were violated. *Onyx Properties LLC* v. *Board of Cty. Comm'rs of Elbert Cty.*, 868 F.Supp.2d 1171, 1174 (citing *Smith v. City of Enid*, 149 F.3d at 1154). Section 1983 claims "arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Kripp v. Luton,* 466 F.3d 1171, 1175 (10th Cir. 2006) (citation omitted). The plaintiff "need not know the full extent of his injuries before the statute of limitations begins to run." *Indus. Constructors Corp.*, 15 F.3d at 969 (citations omitted). Similarly, "it is not necessary that a claimant know all of the

evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993) (citation omitted).

Defendant Talty contends, and Plaintiff does not dispute, that the claims at issue accrued on January 6, 2014, the date of Plaintiff's arrest. *See generally* [#70]. This court agrees that the claims accrued on January 6, 2014, and thus Plaintiff was required to file the complaint arising from those events within two years of that date. Plaintiff initiated this civil action on January 4, 2016. *See* [#1]. But Defendant Talty argues that the timeliness of the original Complaint does not save the claims as asserted against him, because he was not named until several months later. He contends that Plaintiff's substitution of him for Deputy X on April 4, 2016 amounts to adding a new party.

This court respectfully agrees. *See Garrett v. Fleming*, 362 F.3d 692, (10th Cir. 2004) (citing *Watson v. Unipress, Inc.,* 733 F.2d 1386, 1389 (10th Cir. 1984)); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir. 1999) (per curiam) ("[I]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.") (internal quotation marks omitted)). Federal Rule of Civil Procedure 15(c) permits an amended pleading to relate back to the date of the original pleading in certain instances. Where the amended pleading adds a new party, the Rule requires in relevant part that the plaintiff's failure to identify in the original pleading the later-named defendant was due to "a mistake concerning the identity of the proper party." Fed. R. Civ. P. 15(c)(1)(C)(ii). Mr. Mwangi cannot satisfy that criterion here because, "as a matter of law, a plaintiff's lack of knowledge of the intended defendant's identity is not a mistake

concerning the identity of the proper party within the meaning of [the Rule]." *Garrett v. Fleming*, 362 F.3d at 696 (internal quotation marks omitted and citations omitted). As referenced by the *Garrett* court, "the Advisory Committee Notes to Rule 15(c)(3) indicate that the mistake proviso [was included]…in order to resolve the problem of a misnamed defendant and allow a party to correct a formal defect such as a misnomer or misidentification." *Id.* at 696-67 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1103–04 (11th Cir. 1999) (quoting Fed. R. Civ. P. 15(c)(3), Advisory Committee Notes to 1991 Amendment) (internal quotation marks omitted, alteration in original)). Thus, the *Garrett* court instructed, Rule 15(c) allows "an amendment changing the name of a [defendant] to relate back to the original complaint only if the change is the result of such a formal defect," and "a plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type Rule 15(c)(3) was meant to address." *Id.* at 697 (quoting *Wayne*, 197 F.3d at 1103-04) (internal quotation marks omitted, alteration in original). *See also Martinez v. Gabriel*, No. 10–cv–02079–CMA–MJW, 2012 WL 1719767, at *2 (D. Colo. May 15, 2012); *Trujillo v. City and County of Denver*, No 14-cv-02798-RBJ-MEH, 2016 WL 5791208, at *9 (D. Colo. Sept. 7, 2016).[2] Indeed, Plaintiff does not contend that he believed an officer other than Talty (or Deputy X) was liable for the alleged violations, he simply was unable to identify Deputy X as Officer Talty before April 2016. *See* [#70]. Therefore, absent circumstances that justify

---

[2] Plaintiff cites to *Archuleta v. Duffy's Inc.*, 471 F.2d 33 (10th Cir. 1973) for support that Rule 15(c) is applicable here. However, in *Archuleta*, the Tenth Circuit found that the district court had improperly allowed the plaintiff to amend his complaint to name the intended corporate defendant, and thus the case is inapposite to the consideration of these pending motions.

tolling, Plaintiffs' claims as to Defendant Talty were time-barred as of the April 4, 2016 amended pleading.

### 2. Equitable Tolling

Mr. Mwangi appears to concede that his claims against Defendant Talty are time-barred, but argues that he is entitled to tolling because Defendant Talty "actively sought to conceal his identity for the statute of limitation period," and Plaintiff "was mentally incompetent at the time the cause of action accrued." [#70 at 2-3].

As stated above, Colorado's equitable tolling rules apply. *Fratus*, 49 F.3d at 675. In Colorado, the statute of limitations is tolled only when the person is "'a minor under eighteen years of age, a mental incompetent, or a person under other legal disability.'" *Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir. 2006) (quoting Colo. Rev. Stat. § 13–81–101(3), and noting that Colorado recognizes that the doctrine of equitable tolling applies "when flexibility is required to accomplish the goals of justice, such as when plaintiffs did not timely file their claims because of extraordinary circumstances or because defendants' wrongful conduct prevented them from doing so.") (internal quotation marks and citation omitted). Of relevance here, and pursuant to the "other legal disability" theory, Colorado law allows equitable tolling where a defendant "engage[d] in fraudulent concealment of facts pertinent to the existence of a claim." *Garrett v. Fleming*, 362 F.3d at (quoting *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 853 n.7 (Colo. 1992)). However, Plaintiff, as the proponent of tolling, carries the burden of demonstrating the fraudulent concealment and must show that his ignorance of Defendant Talty's name "was not the result of his lack of diligence, but was

due to affirmative acts or active deception by the Defendant to conceal the facts" surrounding Defendant's identity. *Vigil v. City and County of Denver*, 162 F. App'x 809, 812 (10th Cir. 2006) (citing *Indus. Constructors Corp.*, 15 F.3d at 969). *See also Everplay Installation Inc. v. Guindon*, 471 F. App'x 812, (10th Cir. 2012) (Courts have "consistently required a showing of diligence to invoke equitable tolling") (collecting cases).

Plaintiff does not describe the fraud that Defendant Talty allegedly employed to evade identification, nor does Plaintiff identify his efforts to uncover Defendant Talty's identity before the statute of limitations ran.   Mr. Mwangi asserts that he "was unfairly and unconstitutionally barred from any form of access to his discovery, which would have revealed the identity of Officer Talty," and that he "was finally given limited access to his discovery, on September 20, 201**6**, almost two years later," by his public defender.   [#70 at 3 (emphasis added)].[3]   This statement appears to contain a typographical error for the year, as it contradicts Mr. Mwangi's Amended Complaint, in which he alleges that he was able to identify the Denver Defendants as three arresting officers by perusing, "for the very first time on September 20, 201**5**," the discovery from his criminal action; and September 20, 2016 is beyond two years after the event giving rise to this action.[4]   [#6 at ¶ 4 (emphasis added)].   Assuming that Mr. Mwangi was given

---

[3] This court infers that Plaintiff is referring to the underlying State Criminal Action that ensued from his January 6, 2014 arrest. *See generally* [#57-1].

[4] Indeed, it is not logical that Plaintiff received access to such discovery only as of September 20, 2016, when he was convicted on March 2, 2016 and sentenced on April 29, 2016. *See* [#57-1].   Plaintiff also avers in the Amended Complaint that the video

access to discovery from his criminal matter in September 2015, there is no reason why he could not have identified Defendant Talty in January 2016, when he filed his operative Amended Complaint.

Even if discovery was withheld from Mr. Mwangi during the State Criminal Action, he does not allege that Defendant Talty was the party responsible for interfering with the disclosure of information, *see Sharp Bros. Contracting Co. & Sanders Co., Inc. v. Westvaco Corp.*, 878 P.2d 38, 44 (Colo. App. 1994) ("[g]enerally…the party asserting the statute [of limitations] as a defense must be the party engaging in conduct that would make the application of the statute inequitable"), or that discovery in the State Criminal Action was the only resource through which to learn Defendant Talty's identity. Significantly, the record demonstrates that Mr. Mwangi filed his proposed Second Amended Complaint identifying Defendant Talty either seven months after he received discovery in the State Criminal Action, if the court applies the September 2015 date, or five months prior to when he received discovery, if the court applies the September 2016 date. Beyond Plaintiff's bare assertion, there are no factual allegations indicating that Defendant Talty participated in fraud that prevented Plaintiff from learning Defendant Talty's identity prior to the expiration of the statute of limitations.

With respect to Plaintiff's representation regarding his mental capacity, equitable tolling on this basis "is warranted only in 'exceptional circumstances' that may include an adjudication of incompetence, institutionalization for mental incapacity, or evidence that the individual is not 'capable of pursuing his own claim' because of mental

___

allegedly filmed by Deputy Y was admitted in evidence on December 4, 2015. *See* [#6 at ¶ 69].

incapacity." *Reupert v. Workman*, 45 F. App'x 852, 854 (10th Cir. 2002) (quoting *Biester v. Midwest Health Serv., Inc.,* 77 F.3d 1264, 1268 (10th Cir. 1996)).   Mr. Mwangi contends that he was adjudicated mentally incompetent and institutionalized during the State Criminal Action.   *See* [#70 at 2-3].   Indeed, the record of the State Criminal Action demonstrates that in June 2014, the judge ordered a mental health stay, and in September 2014 adjudged Plaintiff incompetent and remanded him to the Department of Human Services.   [#57-1 at 12].   Following another sanity evaluation in December 2014, the judge ruled Plaintiff competent to proceed without objection from either party. *See* [*id.* at 11].   Another competency evaluation was subsequently ordered and Plaintiff was again ruled competent in November 2015.   *See* [*id.* at 9].   The jury ultimately rendered a guilty verdict on March 2, 2016.   [*Id.* at 2].   Accordingly, when Plaintiff initiated this civil action in January 2016, more than one year had elapsed since the state court judge had adjudged him incompetent.   The state court judge subsequently twice reviewed his decision and affirmed the competency finding.   Furthermore, Plaintiff demonstrated an ability to pursue his claims in January 2016 by filing an initial Complaint that withstood in large part the court's scrutiny pursuant to section 1915. Finally, Mr. Mwangi asserts no argument as to why he had the mental capacity to timely pursue his claims as to the Denver Defendants but not as to Defendant Talty.   In light of the foregoing, I find that tolling on the basis of mental incapacity is not warranted.

Finally, to the extent Plaintiff asserts that his incarceration prevented him from identifying Defendant Talty earlier, "[n]o Colorado court has held that an imprisoned person fell into the 'other legal disability category.'"   *Main v. Martin*, No. 06–cv–00232–

WDM–MJW, 2009 WL 215404, at *7 (D. Colo. Jan. 22, 2009) (citing *Fogle*, 435 F.3d at 1259, n.2).  Plaintiff provides no valid rationale for finding that special circumstances surround his incarceration such that the court should part with the weight of authority finding that incarceration alone does not toll the limitations period.

In light of the foregoing, I decline to address Defendant Talty's remaining arguments regarding qualified immunity and whether Plaintiff has sufficiently pleaded his claims.  I respectfully recommend that the court grant Defendant Talty's Motion to Dismiss on the basis that Plaintiff's claims as to this Defendant are time-barred.

## B.    Denver Defendants

The Denver Defendants argue that Plaintiff has not sufficiently alleged their personal participation in the actions giving rise to either the excessive force claim or the due process claim.  *See* [#28].  The Denver Defendants further argue that Plaintiff's due process claim is barred pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  For the reasons addressed below, I both agree and disagree with the Denver Defendants.

### 1.    Fourth Amendment Claim for Excessive Force

Mr. Mwangi argues that Defendants violated his constitutional right to be free from the use of excessive force.  Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment.  *See, e.g., Graham v. Connor,* 490 U.S. 386, 395 (1989).  This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's

attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396).

The Denver Defendants argue that Mr. Mwangi has not alleged the personal participation necessary to state a constitutional violation as to any of them. *See* [#28]. Plaintiffs asserting claims pursuant to section 1983 must "make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1250. However, in certain circumstances where a plaintiff alleges that the individual defendants all participated in a single incident and acted in concert together, it would be inequitable to require a plaintiff to articulate which specific defendant committed which specific act during the incident in question. *See Bark v. Chacon*, No. 10-cv-1570-WYD-MJW, 2011 WL 1884691, at *5 (D. Colo. May 18, 2011);

This case presents a close call. In the operative Amended Complaint, Plaintiff does not distinguish between any of the individual Denver Defendants, but rather refers to "[a]t least half a dozen men…obviously police officers" who "were roughening him up on the ground." [#6 at 9, ¶ 46]. Plaintiff alleges, "[o]ne officer pulled right, another pushed left, and yet another twisted the same hand," and "[a]nother buried their knees and/or elbow on the Plaintiff's back, causing excruciating pain," and "[a]nother slammed and painfully pinned his head, face planting him hard, on the concrete pavement, with his knee or foot." [*Id.* at ¶ 49]. In other allegations, Mr. Mwangi alleges that "about a dozen negligent officers had formed a 'horse shoe' to obscure the view of the public." [*Id.* at ¶ 61]. Mr. Mwangi also alleges that these "other officers" failed to intervene in

Deputy X's misconduct, but instead shielded him from the public with their bodies, while chanting him on. [*Id.* at ¶ 93].  The only allegations specific to an individual are those that implicate Deputy X, whom Plaintiff later identified as Defendant Talty. *See* [*id.* at 10].  There is a fleeting reference to "Deputy Y," whom Plaintiff now alleges, in his Response to Defendant Talty's Motion to Dismiss, is Sergeant Speelman. *See* [*id.* at 69; #70 at 1].  Plaintiff does not specifically articulate the actions of Defendants Norman, Kennedy, or Speelman.[5]

I find this case to be analogous to *Bark v. Chacon.*  In *Bark*, the court denied the individual Defendants' motion to dismiss even though the plaintiff could not correlate a particular action to a particular defendant.  *Bark*, 2011 WL 1884691, at *5. *See also Fogarty v. Gallegos*, 523 F.3d 1147, 1158 (10th Cir. 2008); *Lynch v. Barrett*, No. 09-cv-00405-JLK-MEH, 2010 WL 3938357, at *6-7 (D. Colo. June 9, 2010).  In so ruling, the court distinguished the circumstances from those in *Robbins v. Oklahoma*: "[u]nlike *Robins,* this is not a case where the allegations against the individual Defendants are 'entirely different in character and therefore…mistakenly grouped in a single allegation.'"  *Bark*, 2011 WL 1884691, at *5 (citing *Robbins*, 519 F.3d at 1250). The Denver Defendants similarly rely on *Robbins* to argue that Plaintiff has failed to provide them with fair notice of how they allegedly violated his Fourth Amendment

---

[5] In his Response to the Denver Defendants' Motion to Dismiss, Plaintiff identifies Defendant Kennedy as "implement[ing] improper use of restraints." [#49 at 4].  Plaintiff also alleges in his Response that Defendants Speelman and Kennedy "chose to watch the abuse and even chant[ed] Officer Talty on, instead of 'exercising their duty to intervene and abate the excessive force.'"  [*Id.* at 5]. Plaintiff may not further amend his Complaint by alleging new facts in his Response to the Motion to Dismiss.  *See In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004).

rights.  [#28 at 5-6 ("it is impossible to determine whether Plaintiff is alleging that any of the named Defendants actually participated in the conduct and, if so, what they did.")].  However, I find that the operative Amended Complaint alleges two categories of actors: (1) "at least half a dozen men, now obviously police officers, were roughening [Plaintiff] up on the ground while shrugging [sic]: 'Stop resisting. Stop resisting. Stop resisting"; and (2) "about a dozen negligent officers [] formed a 'horse shoe' to obscure the view of the public," rather than intervene.  [#6 at ¶¶ 46, 61].  The Tenth Circuit has recognized that an officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983.  *See Fogarty*, 523 F.3d at 1162.  *See also Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir. 1996) (an "officer who did not prevent fellow officer's use of allegedly excessive force against an arrestee 'may be liable [under § 1983] if he had the opportunity to intervene but failed to do so'") (citation omitted).  As the court found in *Bark*, I find that based on the circumstances alleged in this case, it would be unfair to require Plaintiff to allege "which specific Defendant committed which specific act during the incident in question." *Bark*, 2011 WL 1884691, at *5.

Drawing all reasonable inferences in favor of Mr. Mwangi, I conclude that the operative Amended Complaint provides adequate notice to the Denver Defendants that Plaintiff has asserted a § 1983 claim against them either for their use of excessive force or their failure to intervene on behalf of a citizen whose constitutional rights are being violated.  *Bark*, 2011 WL 1884691, at *5 ("the allegations in the Amended Complaint provide sufficient notice to the individual Defendants of the claims asserted against them and the grounds upon which those claims rest").

In so concluding, I find that the question of whether the Denver Defendants are entitled to qualified immunity on this claim is better reserved for adjudication at a later date.[6]   In addition, I render no judgment as to the merits of this claim, or whether Mr. Mwangi can overcome summary judgment.   The operative Amended Complaint alleges that as many as a dozen officers were present at the scene of the arrest and that they engaged in various roles.   *See* [#6 at ¶¶ 49, 56, 61].   Accordingly, if Mr. Mwangi cannot marshal sufficient evidence to identify which Denver Defendant engaged in what wrongful conduct, his excessive force claim may be subject to summary disposition. *See Bark v. Chacon*, No. 15-cv-01570-RBJ-MJW, 2012 WL 1080547, at *6 (D. Colo. Mar. 20, 2012) (granting defendants' motion for summary judgment and observing that at the motion to dismiss stage, "[i]t was unknown…whether plaintiff had or could develop evidence, through investigation or discovery, that might link specific wrongful acts to a particular individual. The issue before the Court now is whether plaintiff has come forward with facts that show that there is a genuine dispute of material fact regarding the allegedly wrongful actions of any of these officers.").

### 2.   Fourteenth Amendment Claim Regarding Due Process

The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law.   U.S. Const. amend. XIV, § 1.   Due process claims under the Fourteenth Amendment can take the form of a procedural or substantive violation: "procedural due process ensures the state will not deprive a party

---

[6] The Denver Defendants claim entitlement to qualified immunity on the excessive force claim on the basis that Plaintiff fails to allege their personal participation—not on the basis that the law governing the allegedly unconstitutional conduct was not clearly established at the time of the incident.   *See* [#28 at 4-5].

of property without engaging in fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). Substantive due process protection is accorded primarily to fundamental interests "relating to marriage, family, procreation, and the right to bodily integrity." *Williams v. Berney*, 519 F.3d 1216 (10th Cir. 2008) (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)).

Mr. Mwangi alleges that the Denver Defendants violated his constitutional right to due process "by staging him in public for hours after a severe beat-down," and in failing "to adequately investigate the incident, view and/or retrieve the related CCTV surveillance camera footage, an indispensable exculpatory material evidence to the Plaintiff." [#6 at 15, ¶ 86]. Plaintiff does not identify whether he is asserting a violation of procedural due process, substantive due process, or both, but in the Order Drawing the Case, Judge Babcock limited the due process claim to the allegation that "Defendants had failed to adequately investigate the incident, view and/or retrieve related CCTC surveillance camera footage, an indispensable exculpatory material evidence to Plaintiff." [#12 at 6]. The Denver Defendants do not address under which due process theory Plaintiff proceeds, and argue only that Plaintiff has failed to allege their personal participation under any theory, and that *Heck v. Humphrey* bars relief for any violation.[7]

---

[7] To the extent Mr. Mwangi intended to assert a claim for violation of his substantive due process rights under the Fourteenth Amendment, *see* [#6 at ¶¶ 40-80, 86, 94-95], he intertwines his Fourteenth Amendment due process claim with his Fourth Amendment

Plaintiff's procedural due process claim based on Defendants' failure to adequately investigate, which purportedly would have resulted in exculpatory evidence, is barred by *Heck v. Humphrey*.   Under *Heck v. Humphrey*, a person convicted of a criminal offense must first have the underlying conviction nullified or overturned before he may proceed on a claim that would render the conviction or sentence invalid.   512 U.S. at 486-87.   *See also Fritz v. Colorado*, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002) ("When an inmate brings a 42 U.S.C. § 1983 action alleging his conviction violates his constitutional rights, to recover damages the inmate must prove the conviction or sentence has been: 1) reversed on direct appeal; 2) expunged by executive order; 3) declared invalid by authorized state tribunal; or 4) called into question by a federal court's issuance of a writ of habeas corpus.") (citing *Heck*, 512 U.S. at 486-87).   In alleging that the Denver Defendants violated his constitutional rights by failing to investigate, or by improperly withholding exculpatory evidence, during the State Criminal Action, Plaintiff calls into question the validity of his kidnapping conviction.   *See Heck*, 512 U.S. at 486-87 ("[T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the

---

excessive force claim.   *See* [*id.* at 14-15 ("Plaintiff Was Denied Due Process Under The Fourth Amendment To The Constitution")].   Indeed, the Fourth Amendment claim and the Fourteenth Amendment claim are premised on the same allegations.   *See generally* [#6].   Where a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate for that specific provision, rather than pursuant to the rubric of substantive due process. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).   In addition, Judge Babcock limited Plaintiff's Fourteenth Amendment claim against the Denver Defendants as specified above.   *See* [#12].

conviction or sentence has already been invalidated").[8]  Defendants represent that this

conviction has not been overturned, *see* [#28 at 7], and Plaintiff offers no dispute.  *See*

[#49].  Thus, under the theory that "[c]ivil tort actions are not appropriate vehicles for

challenging the validity of outstanding criminal judgments," *Heck*, 512 U.S. at 486,

Plaintiff's due process claim fails as a matter of law.

## CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

1. The Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Anthony Norman, Justin Kennedy, and Perry Speelman [#28] be **GRANTED IN PART and DENIED IN PART**;

2. Plaintiff's claim for a violation of due process rights under the Fourteenth Amendment (Count III) be **DISMISSED**, which leaves the excessive force claim as the sole cause of action against Defendants Norman, Kennedy, and Speelman**;** and

3. The Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Vincent Talty [#57] be **GRANTED** and all claims against Defendant Talty be **DISMISSED** based on the statute of limitations.[9]

---

[8] Plaintiff characterizes the arrest as "unjustified and unlawful." [#6 at 13, ¶¶ 77-80]. *Cf. Fritz*, 223 F.Supp.2d at 1202-03 (in finding that *Heck* did not apply directly to bar plaintiff's claims, noting that plaintiff conceded that his conviction and sentence were valid).

[9] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal

Additionally, consistent with the Recommendation, **IT IS ORDERED**:

1. The Motion to Strike Surreply [#64] is **GRANTED**;

2. The Motion Requesting A Scheduling Conference [#71] is **DENIED**; and

3. The Motion to Stay [#76] is **GRANTED**.

DATED: December 13, 2016                    BY THE COURT:

                                            s/Nina Y. Wang_____
                                            United States Magistrate Judge

---

from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).